UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JEREMY SHANE                                                                           PETITIONER
FOGLEMAN,

V.                                                          CIVIL ACTION NO. 1:20-CV-12-HSO-RPM

EVAN HUBBARD,                                                                         RESPONDENT

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On January 13, 2020, petitioner Jeremy Shane Fogleman ("Fogleman"), proceeding *pro se*, filed a writ for habeas corpus seeking immediate release from pretrial detention. Doc. [1]. Originally brought under both 28 U.S.C. § 2241 ("Section 2241") and 28 U.S.C. § 2254, U.S. District Judge Ozerden ("Judge Ozerden") issued an order construing Fogleman's habeas petition as arising solely under Section 2241 because he is only challenging his pretrial detention. Doc. [5]. On March 17, 2021, respondent Evan Hubbard ("State") filed the instant motion to dismiss. Doc. [30].

### II.   RELEVANT BACKGROUND

In the early morning hours of July 8, 2015, Gulfport Police Department Officer Nicholas Kehoe ("Officer Kehoe") spotted an orange Chevrolet Camaro ("Camaro") doing "burnouts" around the traffic intersection between 28th Street and 22nd Avenue in Gulfport, MS. Doc. [31], Ex. 42, (T. 665); Ex. 43 (T. 822). Turning on his lights and siren, Officer Kehoe attempted to pull over the Camaro for careless driving. *Id.*, Ex. 42, (T. 667). However, the Camaro sped off at a "very high rate of speed . . . in excess of 80 MPH" *Ibid.* After only a few blocks, the Camaro ran

a red light at another intersection and struck the side of Edward Frederickson's ("Frederickson") car at roughly 65 MPH; the impact caused both cars to careen into Cassandra Walker's ("Walker's") car. *Id.*, Ex. 14, at 11; Ex. 42, (T. 669); Ex. 43, (T. 822, 825); Ex. 46, (T. 1250–53). Immediately after the accident, Officer Kehoe observed Fogleman exit the Camaro through the driver's side door. *Id.*, Ex. 42, (T. 671–75). Conducting an inventory search of the crashed Camaro, Officer Kehoe discovered roughly 2.3 grams of methamphetamine in the car's central console. *Id.*, Ex. 42, (T. 677–78). While Walker eventually recovered from the serious injuries she suffered, Frederickson dies of his injuries a few days after the crash. *Id.*, Ex. 43, (T. 825, 828); Ex. 46, (T. 1250–53). On February 17, 2016, Fogleman appeared at a preliminary hearing in connection with the above events. *See*, *e.g.*, Doc. [31], Ex. 7, at 2, 51; Ex. 8, at 14. At that hearing, he allegedly made perjurious statements about the identity of the Camaro's driver. *See*, *e.g.*, *id.*, Ex. 7, at 51; Ex. 37, at 107; Ex. 38, (T. 109, 171, 205).

On August 1, 2016, a grand jury indicted Fogleman with four felonies: (i) failure to stop a motor vehicle pursuant to a law enforcement officer's signal that resulted in the death of another person (Count I), Miss. Code. Ann. § 97–9–72(4); (ii) failure to stop a motor vehicle pursuant to a law enforcement officer's signal that resulted in serious bodily injury to another person (Count II), Miss. Code. Ann. § 97–9–72(3); (iii) possession of a controlled substance (Count III), Miss. Code. Ann. § 41–29–139(c)(1); and (iv) perjury (Count IV), Miss. Code. Ann. § 97–9–59. *See* Doc. [11], Ex. 1; [31], Ex. 39, at 52.[1] On February 14, 2018, he was denied pretrial bond on the grounds that he was a "special danger" to the community. Doc. [31], Ex. 3, at 149–50; Ex. 13, at

---

[1] On October 18, 2016, Fogleman elected to proceed *pro se*, but standby counsel was appointed. Doc. [31], Ex. 4, at 127–28; Ex. 38 (T. 63–65, 89–90). During trial on Counts I–III, the judge revoked Fogleman's right to self-representation after several warnings. *Id.*, Ex. 48 (T. 1526–31).

80; Ex. 38 (T. 137). The perjury charge was eventually severed from the other charges. Doc. [27], Ex. 3; [31], Ex. 39, (T. 279).

Thereafter, Fogleman eventually filed the present pretrial habeas petition on January 13, 2020. Doc. [1].[2] Shortly after Fogleman filed the instant petition, he was brought to trial on Counts I–III. Doc. [11], Ex. 4. On February 13, 2020, a jury convicted Fogleman on all three counts and the state trial judge sentenced him to fifty years in prison. *Ibid.* At that time, however, the State did not pursue the severed perjury charge. Doc. [11], Ex. 4. *See also Fogleman v. State*, 311 So.3d 1221, 1225 n.1 (Miss. Ct. App. 2021). After Fogleman was convicted, the State moved to dismiss Fogleman's pretrial habeas petition on the grounds that it was moot. Doc. [11].

On January 15, 2021, the undersigned filed a report and recommendation opining that Fogleman's pretrial habeas petition should be dismissed as moot. Doc. [24]. On March 9, 2021, U.S. District Judge Sul Ozerden ("Judge Ozerden") entered an Order overruling in part Fogleman's objections and modifying in part this Court's report and recommendation. Doc. [29]. In overruling Fogleman's objections, Judge Ozerden dismissed his habeas petition without prejudice insofar as it concerned Counts I–III. *Id.*, at 8–9. Modifying this Court's conclusions, however, Judge Ozerden identified the State's lack of clarity about whether Count IV was dismissed. *Id.*, at 6. *See also* Doc. [11], Ex. 1. After the State presented an order demonstrating that Count IV was "passed to the files," Doc. [28], Ex. 1, Judge Ozerden expressed concern that "passing to the files" did not equate a dismissal. Doc. [29], at 7. As a result, the State was granted leave to refile its motion to dismiss

---

[2] The Court previously set forth a liberal construction of Fogleman's petition, which he did not dispute. Doc. [25, 27]; *Lavergne v. HCA Inc.*, 452 F. Supp. 2d 682, 692 (E.D. Tex. 2006). As before, Fogleman alleges that his First Amendment, Doc. [1], at 4; Sixth Amendment right to effective assistance of counsel, *id.*, at 28; Eighth Amendment, *id.*, at 26, 30; and Fourteenth Amendment due process rights have been violated, *id.*, at 16, 18, 21, 30–32, 36.

3

with additional clarity on this issue. *Ibid.* Taking this opportunity, the State filed the instant motion focusing on the sole remaining Count underlying Fogleman's petition, Count IV. Doc. [30].[3]

### III. ANALYSIS

#### A. Is there still an "Active Case or Controversy?"

##### i. Introduction

The Court begins with the State's threshold argument that Fogleman's habeas petition no longer presents an active case or controversy. Doc. [30], at 7–12. While conceding that Fogleman was "in custody" upon filing his habeas petition, 28 U.S.C. § 2241(c)(3),[4] and declining to raise an exhaustion argument, the State argues that passing an indictment to the files, within itself, extinguishes any existing case or controversy in a pretrial habeas petition. Doc. [30], at 7–12.

##### ii. Active Case or Controversy Generally

Pursuant to Section 2241, a pretrial detainee can file a habeas petition. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). In order to be eligible for pre-trial habeas relief, "a petitioner must be 'in custody' and must have exhausted his available state remedies[.]" *Dickerson v. Louisiana*, 816 F.2d 220, 224–26 (5th Cir. 1987). While Section 2241 itself contains the "in custody" requirement, 28 U.S.C. § 2241(c)(3), "[t]he exhaustion doctrine is a judicially crafted instrument [,]" *Braden*, 410 U.S. at 490, 93 S.Ct. 1123

---

[3] The Court notes that Fogleman claims that he is "separately" sending CDs along with his response in opposition to the State's motion. Doc. [41], at 5. While his opposition response was due on December 31, 2021, Doc. [40], Fogleman did not actually deliver his response to prison authorities until January 4, 2022. Doc. [41, 43]. In turn, Fogleman's response in opposition is late and merely the latest incident wherein Fogleman does not comply with a court deadline. Doc. [25, 26, 32, 33, 37]. Indeed, he has been given at least nine months to respond to the State's motion. Notwithstanding the above, the Court has considered his January 4, 2022 filings that have arrived at the Court. To date, however, the CDs that Fogleman claimed will "arrive separately" have failed to materialize. It is now January 25, 2022. These CDs are untimely and will not be considered.

[4] To the extent that the State relies on *Howard v. Warden*, 776 F.3d 772 (11th Cir. 2015), it is inapplicable here. Doc. [30], at 9. In *Howard*, the Eleventh Circuit tackled the question of whether a "dead docketed" charge rendered the petitioner "in custody" under Section 2241(c)(3). *Ibid.* As the State concedes, the Court is addressing a distinct legal question—whether there is still an active case or controversy here.

4

(citations omitted). However, the habeas petitioner need not only be "in custody" and exhaust his state remedies to maintain a pretrial habeas petition. "'In order to maintain jurisdiction, the court must have before it an actual case or controversy at all stages of the judicial proceedings.'" *Herndon v. Upton*, 985 F.3d 443, 446 (5th Cir. 2021) (quoting *United States v. Vega*, 960 F.3d 669, 672 (5th Cir. 2020)). As such, the petitioner must "separately satisfy the case-or-controversy requirement of Article III, Section 2 of the Constitution[,]" *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), which constrains federal court jurisdiction to adjudicating "actual, ongoing controversies between litigants[,]" *Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) (internal quotation marks and citation omitted). See also *Salgado v. Fed. Bureau of Prisons*, 220 F. App'x 256, 257 (5th Cir. 2007) (finding that a Section 2241 habeas petition is only moot when the "court cannot grant the relief requested by the moving party. . . .").

### iii. Passing an Indictment to the Files Generally

Passing an indictment (or charge) to the files describes a method by which the State can "postpone" a criminal judicial proceeding. *Hall v. State*, 187 So.3d 133, 137 (Miss. 2016) (quoting *Gordon v. State*, 90 So. 95, 95 (Miss. 1921)). Normally, the State will pass an indictment, or a portion thereof, to the files when it is "unwilling to recommend a[n] [order of] *nolle prosequi*," *Hall*, 187 So.3d at 137, i.e. dismissal of the indictment without prejudice, *Payton v. State*, 41 So.3d 713, 717–18 (Miss. Ct. App. 2009); *Beckwith v. Anderson*, 89 F. Supp. 2d 788, 792 (S.D. Miss. 2000), but willing to, for example, decline to pursue the charge "pending good behavior" by the defendant, *Hall*, 187 So.3d at 137. See also *Cooper v. State*, 118 So. 452, 452 (Miss. 1928) (finding

passing indictment to the files appropriate while defendant's competency was in question). Furthermore, at least as a matter of course, the State must move the state trial court to pass an indictment to the files. *Cooper*, 118 So. at 452; *Lofton*, 115 So. at 593. When the State has passed an indictment to the files, the indictment is declared "inactive" and remains pending as such on the state trial court's "inactive" docket. *Hall*, 187 So.3d at 137; *Walton v. City of Tupelo*, 90 So.2d 193, 194 (Miss. 1956).[5] To "reactivate" an indictment passed to the files, the State must file a motion with the state trial court. *Hall*, 187 So.3d at 137; *Byrd v. State*, 175 So. 190, 191 (Miss. 1937); *Gordon*, 90 So. at 95. At that time, the defendant may challenge reactivation of the indictment. *See, e.g.*, *Rush v. State*, 182 So.2d 214, 216–17 (Miss. 1966). While passing an indictment to the files is a court-approved process, the procedure lacks formal codification in statute or court rule.[6]

### iv. Does passing an indictment to the files operate as a dismissal of the indictment?

Within the above context, the Court turns to the State's argument that passing an indictment to the files equates a dismissal without prejudice and, thus, renders Fogleman's petition moot. Doc. [30], at 7–12. For the reasons that follow, the State's argument fails.

First, under the Mississippi state constitution,[7] a defendant can only be prosecuted for a felony offense in Mississippi if a grand jury returns an indictment. *Quick v. State*, 569 So.2d 1197, 1199 (Miss. 1990) ("It is very clear that, from the beginning, the people of Mississippi have ordained that they not be prosecuted for felonies except upon the indictment by a grand jury."). *See also State v. Berryhill*, 703 So.2d 250, 257 (Miss. 1997). However, the State can later dismiss that

---

[5] In passing, the Court's reference to the "state trial court" herein refers solely to the Mississippi circuit courts.
[6] In turn, the Court's discussion thereof can only be painted with broad strokes. *Hall*, 187 So.3d at 137; *Gordon*, 90 So. at 95. For example, it is not entirely clear how onerous the State's burden is to reactivate an indictment.
[7] Absent waiver, the only exception to the felony indictment rule arises in cases involving "the land or Naval forces, or the military when in actual service." *Quick*, 569 So.2d at 1199 (citing *State v. Sansome*, 97 So. 753 (Miss. 1923)).

indictment without prejudice through an order of *nolle prosequi*. *Payton*, 41 So.3d at 717–18; *Beckwith*, 89 F. Supp. 2d at 792. Thereafter, the State may subsequently seek to prosecute the charges in the dismissed indictment. *De La Beckwith v. State*, 707 So.2d 547, 565–66 (Miss. 1997). Nevertheless, at that time, the defendant is *also* constitutionally entitled to be reindicted. *See*, *e.g.*, *State v. Shumpert*, 723 So.2d 1162, 1165 (Miss. 1998). By contrast, a felony indictment passed to the files can be reactivated on motion alone by the State before the state trial court—reindictment of the defendant is not required. *Hall*, 187 So.3d at 137; *Gordon*, 90 So. at 95. Therefore, passing an indictment to the files cannot constitutionally operate as a dismissal without prejudice because reindictment is not required to reactivate and prosecute the charges in that indictment.

Furthermore, the Mississippi state constitution limits the state trial court's subject-matter jurisdiction over felony criminal matters. *Box v. State*, 241 So.2d 158, 159 (Miss. 1970) *overruled on other grounds by Jefferson v. State*, 556 So.2d 1016 (Miss. 1989). In particular, a state trial court lacks subject-matter jurisdiction over a criminal prosecution until a grand jury returns an indictment against the defendant. *Id.* ("It is the indictment by a grand jury that gives the court jurisdiction of a felony charge and without an indictment the court has no jurisdiction to proceed in a felony case."). *See also Quick*, 569 So.2d at 1199. Absent subject-matter jurisdiction, the state trial court cannot preside over prosecution of a particular felony charge. *Quick*, 569 So.2d at 1199. Once again, an indictment passed to the files remains on the state trial court's "inactive" docket and the State can reactivate it on motion before that court—reindictment is not required. *Hall*, 187 So.3d at 137; *Gordon*, 90 So. at 95. Since the state trial court can preside over an indictment reactivated from the files and such reactivation occurs without reindictment, it follows that the indictment was never dismissed in the first instance.

Finally, the Mississippi Supreme Court has repeatedly differentiated between passing an indictment to the files and an order of *nolle prosequi*. *Hall*, 187 So.3d at 137; *Walton*, 90 So.2d at 196. An order of *nolle prosequi* results in dismissal of an indictment without prejudice. *Caston v. State*, 823 So.2d 473, 503–4 (Miss. 2002); *Payton*, 41 So.3d at 717–18; *Beckwith*, 89 F. Supp. 2d at 792. In turn, passing an indictment to the files necessarily refers to something *other than* a dismissal without prejudice. Addressing this exact point, the Mississippi Supreme Court characterized passing an indictment to the files as a "postpone[ment]" that is deployed when the State is "unwilling" to utilize an order of *nolle prosequi*, which it described as an "end on the docket." *Hall*, 187 So.3d at 137 (quoting *Walton*, 90 So.2d at 196). An "end" is hardly less final than a "postpone[ment]." *Ibid.* As a result, passing an indictment to the files results in something less than a dismissal without prejudice.

The Court disagrees with the State's argument that *Hyer v. Caruso*, 102 So.3d 1232, 1236 (Miss. Ct. App. 2012) stands for the proposition that passing an indictment to the files equates a dismissal without prejudice. Doc. [30], at 10–11. In *Hyer*, the Mississippi Court of Appeals held that passing an indictment to the files satisfies the "termination of proceedings" element of a malicious prosecution claim. *Hyer*, 102 So.3d at 1236. To begin with, the "termination of proceedings" element of a malicious prosecution claim is more expansive than it appears on its face; the element captures circumstances where "the action is either abandoned by the prosecuting attorney or by the complaining witness" and, in any case, extends beyond "final terminations." *Id.* (quoting *Royal Oil Co. v. Wells*, 500 So.2d 439, 443 (Miss. 1986)). More importantly, however, the Mississippi Court of Appeals' decision, which arises in the context of a civil tort case, is simply not transferrable to the criminal law context here. Critically, the State's reading of *Hyer* runs afoul of the Mississippi state constitution because it endorses revival of a dismissed indictment on

8

motion, not reindictment, in state trial court. *Quick*, 569 So. 2d at 1199. For these reasons, the State's reliance on *Hyer* is misplaced.

Next, the Court addresses the State's argument that *Rew v. Vincent*, 489 F. Supp. 3d 563 (S.D. Miss. 2020) supports its reading of *Hyer*. Doc. [30], at 10–11. The Court disagrees. For one, in *Rew*, the court itself differentiated between dismissal of an indictment and passing an indictment to the files. *Rew*, 489 F. Supp. 3d at 575. If anything, therefore, *Rew* supports the proposition that passing an indictment to the files does not equate a dismissal thereof. *Ibid.* More importantly, like with *Hyer*, the State's reading of *Rew* would still run afoul of the Mississippi state constitution. *Quick*, 569 So. 2d at 1199. The State's reliance on *Rew* is also misplaced.[8]

Ultimately, passing an indictment to the files cannot operate as a dismissal thereof under existing Mississippi law. The Mississippi Supreme Court has made it clear that: (i) passing an indictment to the files operates as a "postpone[ment]" and can be reactivated on motion alone, *Hall*, 187 So.3d at 137; (ii) a felony prosecution can only proceed if a grand jury returns an indictment, *Quick*, 569 So. 2d at 1199; and (iii) if an indictment is dismissed without prejudice, it can only be revived upon reindictment, *Shumpert*, 723 So. 2d at 1165. Since the State need not reindict before withdrawing and prosecuting an indictment passed to the files, passing an indictment to the files cannot be a dismissal but only something less than a dismissal. With the above in mind, the Court need not further probe the practice of passing an indictment to the files here. After all, the State argues that the mere fact that an indictment is passed to the files

---

[8] The State also appears to rely on Justice Kitchen's dissent in *Flynt v. State*, 183 So.3d 1, 15–17 (Miss. 2015) (KITCHENS, J. dissenting). Doc. [30], at 10. However, as the State concedes, Justice Kitchens described passing an indictment to the files as a dismissal without prejudice *or* "holding the indictment in abeyance." *Flynt*, 183 So.3d at 17. Furthermore, in *Flynt*, Justice Kitchens included the period that the indictment was passed to files in his speedy trial calculation of the days that the defendant was under accusation. As the Court will detail below, this inclusion is appropriate because the indictment passed to the files was not formally dismissed. Finally, and most importantly, the Mississippi Supreme Court characterized passing to the files as a "postponement" a year later; thus, ending any question over the appropriate characterization of the practice. *Hall*, 187 So.3d at 137.

9

extinguishes any active case or controversy. Doc. [30], at 7–12. The State's sweeping view is incorrect. *Knox*, 567 U.S. at 307, 132 S.Ct. 2277. To illustrate, the Court addresses one example here—the Sixth Amendment right to a speedy trial.

The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. U.S. Const. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). "The Speedy Trial Clause of the Sixth Amendment guarantees defendants the minimum speedy-trial protection tolerable under the U.S. Constitution." *Collins v. Comm'r, Miss. Dept. of Corr.*, No. 2:18–CV–46–TBM–RPM, 2021 WL 4330974, at *6 (S.D. Miss. Aug. 3, 2021) (citing *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)), *adopted*, No. 2:18–CV–46–TBM–RPM, 2021 WL 4316952 (S.D. Miss. Sept. 22, 2021). The federal constitutional right to a speedy trial is fundamental and implements the "bedrock presumption . . . of innocence" by "prevent[ing] undue and oppressive incarceration prior to trial, . . . minimiz[ing] anxiety and concern accompanying public accusation [,] and . . . limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself." *Betterman v. Montana*, 578 U.S. 437, 441, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016) (quoting *United States v. Marion*, 404 U.S. 307, 320–321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

When a defendant is "arrested or formally accused[,]" whichever comes first, his Sixth Amendment speedy trial right "attaches" and the speedy trial clock begins to tick. *Betterman*, 578 U.S. at 441, 136 S.Ct. 1609 (citing *Marion*, 404 U.S. at 320–321, 92 S.Ct. 455). During the period of accusation, the Sixth Amendment speedy trial clock continues to run. *Betterman*, 578 U.S. at 441, 136 S.Ct. 1609 (emphasis in original) (quoting U.S. Const., Amdt. 6) ("Reflecting the concern that a presumptively innocent person should not languish under an unresolved charge, the Speedy Trial Clause guarantees '*the accused*' 'the right to a speedy . . . trial.'"). The speedy trial clock

only stops "ticking," *inter alia*, after an indictment is "formally dropped" or "dismissed." *United States v. MacDonald*, 456 U.S. 1, 7, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). This is because, after dismissal of the accusatory instrument, "any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." *Id.* at 8–9, 102 S.Ct. 1497. *See also Singh v. State*, 236 A.3d 720, 731–32 (Md. Ct. Spec. App. 2020). In short, after indictment or arrest, the Sixth Amendment speedy trial clock continues to run until, inter alia, the indictment is dismissed with or without prejudice. *MacDonald*, 456 U.S. at 7, 102 S.Ct. 1497. *See also Caston*, 823 So.2d at 503–4 ("Based on case law, it is clear that once the order for *nolle prosequi* was entered on July 20, 1970, the Sixth Amendment right to speedy trial no longer had relevance to the case."); *De La Beckwith*, 707 So.2d at 565–66 ("These rights continue until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment.").

### ii. Is there an active case or controversy here?

In light of the above, passing an indictment to the files does not operate to extinguish an active case or controversy. Under binding state and federal law precedent, the dividing line between mere investigation and formal accusation is the existence of the formal accusation, i.e. the indictment. *MacDonald*, 456 U.S. at 7, 102 S.Ct. 1497; *Caston*, 823 So.2d at 503–4. Once a defendant has been indicted with a felony in Mississippi, the State—through a grand jury of the defendant's peers—has formally accused him of committing a criminal act; indeed, they have also concluded that probable cause exists that he committed such crime. *Griffin v. State*, 824 So.2d 632, 634–35 (Miss. Ct. App. 2002). *See also* Doc. [31], Ex. 39, (T. 209). The State's mere "postpone[ment]" of prosecuting the indicted charge, *Hall*, 187 So.3d at 137, does not remove the resulting cloud of official accusation hanging over the defendant's head because it does not result in dismissal of the

11

indictment, *see, e.g.*, *MacDonald*, 456 U.S. at 9, 102 S.Ct. 1497; *State v. Redding*, 561 S.E.2d 79, 833 (Ga. 2002); *Singh*, 236 A.3d at 731–32. It also does not place the defendant in the same position as someone merely under investigation. Cf. *MacDonald*, 456 U.S. at 9, 102 S.Ct. 1497. So long as a defendant is under indictment, his Sixth Amendment speedy trial right continues to be implicated, whether the indictment is passed to the files, *Hall*, 187 So.3d at 137, "dead docketed[,]"*Redding*, 561 S.E.2d at 833; stricken with leave, *Ferguson v. City of Chicago*, 820 N.E.2d 455, 101–2 (Ill. 2004); or subject to an order of "*nolle prosequi* with leave," *Singh*, 236 A.3d at 731–32. Since a defendant's speedy trial clock does not stop ticking when his charge is passed to the files, pretrial habeas relief is still potentially available to him. For example, he can seek for the Court to enforce the State's obligation to bring him to trial. *Atkins v. Michigan*, 644 F.2d 543, 548 (6th Cir. 1981). *See also Montano v. Texas*, 867 F.3d 540, 545 (5th Cir. 2017); *Dickerson*, 816 F.2d at 224–26. If the Court ordered the petitioner to be brought to trial, then it would be granting Sixth Amendment relief to him—resolution of the official accusation against him in a speedy manner. *See, e.g.*, *Portis v. Sollie*, No. 3:20–CV–316–TSL–RPM, 2021 WL 908214, at *2–*3 (S.D. Miss. Jan. 20, 2021), *adopted*, No. 3:20–CV–316–TSL–RPM, 2021 WL 899079 (S.D. Miss. Mar. 9, 2021). For these reasons, contrary to the State's position, passing an indictment to the files does not, without more, completely extinguish an active case or controversy.

### B. Special Circumstances

#### i. Law

The Court's threshold analysis does not necessarily terminate at this juncture. *Brown v. Estelle*, 530 F.2d 1280, 1282–83 (5th Cir. 1976). "[T]here is a distinction between a petitioner who seeks to 'abort a state proceeding or to disrupt the orderly functioning of state judicial processes' by litigating a speedy trial defense to a prosecution prior to trial, and one who seeks only to enforce

the state's obligation to bring him promptly to trial." *Dickerson*, 816 F.2d at 226 (quoting *Brown*, 530 F.2d at 1282–83). If the petitioner is only seeking to "enforce the state's obligation to bring him promptly to trial[,]" he must only exhaust his state remedies and be "in custody" before the Court reaches the merits of his petition. *Ibid.* In such a context, these are the petitioner's only two hurdles at the threshold because enforcing the State's obligation to bring him to trial does not disrupt a state court proceeding. *Braden*, 410 U.S. at 489, 93 S.Ct. 1123. *See also Brown v. Ahern*, 676 F.3d 899, 901–2 (9th Cir. 2012); *Portis*, 2021 WL 908214, at *2.[9] On the other hand, if the petitioner seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes[,]" he must also show "special circumstances," *Braden*, 410 U.S. at 491, 93 S.Ct. 1123, because he is seeking to "short circuit the judicial machinery of the state courts[,]" *Brown*, 530 F.2d at 1283 (citation omitted).

The U.S. Supreme Court has never specifically defined what constitutes "special" circumstances. *Portis*, 2021 WL 908214, at *2 (citation omitted). Nevertheless, in *Younger v. Harris* and its companion cases, the Court put forth three, roughly defined "special circumstances" situations that warrant federal court interference notwithstanding an ongoing state court proceeding. 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[10] These three situations, applicable in the federal habeas context, *see Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977), are:

---

[9] When reviewing such a claim, the Court focuses on the "reasonableness of the delay, that is, whether the state is justified in having failed to commence trial . . . promptly." *Atkins*, 644 F.2d at 548. In his petition, Fogleman does not seek enforcement of the State's obligation to bring him to trial on Count IV. Doc. [1]. Even after the Court warned Fogleman about the narrow scope of pretrial habeas proceedings, *Fogleman v. Hubbard*, No. 1:20–CV–12–HSO–RPM, 2021 WL 5001423, at *2 (S.D. Miss. Oct. 21, 2021), he also did not seek such relief in opposition to the State's motion to dismiss, Doc. [41]. Instead, he only seeks dismissal of Count IV. *Id.*, at 7.

[10] Here, the Court briefly addresses the *Younger* factors. *Portis*, 2021 WL 908214, at *2 n.3. First, there is an ongoing state proceeding because prosecution of Count IV has, at most, been "postpone[d]," the State can reactivate the indictment on motion at any time, and Fogleman requests dismissal of the still-pending perjury indictment. *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 717 (5th Cir. 2012); *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 520–21 (5th Cir. 2004). Furthermore, the State has a strong interest in prosecuting Fogleman for allegedly lying under oath in state court. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984). Finally, Fogleman may file a pretrial state habeas corpus petition to generally vindicate his constitutional rights. *Nelson v. Tullos*, 323 So.2d 539 (Miss. 1975). Likewise,

13

> (1) [where] the state-court proceeding was brought in bad faith or to harass the federal p[etitioner]; (2) [where] the federal p[etitioner] seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," ... [and] (3) where other "extraordinary circumstances" threaten "irreparable loss [that] is both great and immediate."
>
> [*Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746).]

The petitioner bears the burden of showing that an exception applies. *Id.* at 881; *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972). "Mere conclusory allegations . . . are insufficient to overcome *Younger*—a p[etitioner] seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). *See also Thomas v. State*, 294 F. Supp. 3d 576, 595 (N.D. Tex. 2018) (finding petitioner's allegations to be conclusory and speculative), *adopted*, No. 3:17–CV–0348–N–BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018); *Leachman v. Gonzalez*, No. 4:19–CV–2943, 2020 WL 6152537, at *5 (S.D. Tex. Oct. 20, 2020). Finally, "errors or mistakes by a trial judge are not 'special circumstances' warranting an exception to the *Younger* rule." *Ballard v. Wilson*, 856 F.2d 1568, 1571 (5th Cir. 1988) (quotation omitted).

### ii. Application

#### a. Bad Faith/Harassment Exception

Starting with the bad faith/harassment special circumstance, it is well-established that "[a] prosecution is taken in bad faith if state officials proceed 'without hope of obtaining a valid conviction.'" *Gates*, 885 F.3d at 882 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971)). As such, "the 'bad faith' exception is narrow and should be granted

---

Fogleman can seek vindication of his constitutional rights if he is convicted of perjury. *See, e.g., Gibson v. Orleans Par. Sheriff*, 971 F. Supp. 2d 625, 631 (E.D. La. 2013).

parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). It is the petitioner's burden to establish actual proof of bad faith. *Hensler v. Dist. Four Grievance Comm. of State Bar of Tex.*, 790 F.2d 390, 391 (5th Cir. 1986).

Here, there is no bad faith/harassment special circumstance. Fogleman was indicted with perjury after allegedly stating at his preliminary hearing, under oath and without evidence, that he was not driving the Camaro at the time of the crash. Doc. [11], Ex. 1. *See also* Miss. Code. Ann. § 97–9–59; *Ford v. State*, 956 So. 2d 301 (Miss. Ct. App. 2006). In his habeas petition, Fogleman attempts to demonstrate that he was not driving the Camaro. Doc. [41]. For example, he claims that police dashcam footage of the crash was "falsified" because an undated Google Earth image shows a somewhat different geographic layout than the video. *Id.*, Ex. 11, at 17. Viewing his evidence in the most favorable light, Fogleman has presented some evidence that may support a perjury defense. *Ibid.* However, the State's own proof certainly gives it a colorable basis to prosecute him, such as eyewitness testimony by Officer Kehoe and Fogleman's alleged passenger. Doc. [31], Ex. 41, (T. 52); Ex. 42, (T. 72–73); Ex. 46, (T. 13–14). In any case, Fogleman has not presented any *actual* proof that the State are prosecuting him for perjury in bad faith. *Thomas*, 294 F. Supp. 3d at 595. Ultimately, the bad faith exception is not available to Fogleman.

### b. Statutory Exception

The second type of special circumstance is: "[where] the federal p[etitioner] seeks to challenge a state statute that is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it[.]" *Gates*, 885 F.3d at 882 (citation omitted). Here, Fogleman neither makes such an allegation about Miss. Code. Ann. § 97–9–59 in his petition, Doc. [1], nor in his opposition to the State's motion to dismiss, Doc. [41]. Even assuming *arguendo* that Fogleman did make the

15

vaguest outline of such an allegation, he has not provided any basis for this Court to conclude that the perjury statute itself is "flagrantly and patently" unconstitutional. *Gates*, 885 F.3d at 882. Therefore, this avenue to relief is also unavailable to Fogleman.

### c. Other "Extraordinary Circumstances"

Finally, the Court turns to the question of whether there are other "extraordinary circumstances" in this case. *Gates*, 885 F.3d at 882. Although the Supreme Court has not defined the scope of the catch-all "extraordinary circumstances" exception, it has made clear that "[o]nly if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference accorded to the state criminal process." *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). "[S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinary pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Id.* at 125, 95 S.Ct. 1524. Finally, the threatened irreparable harm must go "above and beyond that associated with the defense of a single prosecution brought in good faith[.]" *Younger*, 401 U.S. at 48, 91 S.Ct. 746.

Here, there are no other extraordinary circumstances warranting federal court intervention. Aside from his bad faith argument, the Court liberally construes Fogleman's general reference to the State's failure to give him a preliminary hearing on Count IV as an "extraordinary circumstances" argument. Doc. [41], at 6. For one, however, it is well-established Fogleman does not have a federal constitutional right to a preliminary hearing on probable cause. *Harris v. Estelle*, 487 F.2d 1293, 1296 (5th Cir. 1974); *Siwakowski v. Beto*, 455 F.2d 915 (5th Cir. 1972). Furthermore, a grand jury indicted Fogleman with perjury. Doc. [11], Ex. 1. Therefore, the grand jury determined that probable cause exists to suggest that Fogleman committed perjury—making

16

a preliminary hearing on probable cause merely redundant. *See*, *e.g.*, *Griffin*, 824 So.2d at 634–35. As a result, the State's failure to give Fogleman a preliminary hearing does not constitute an extraordinary circumstance. *Kugler*, 421 U.S. at 124, 95 S.Ct. 1524. This argument fails.

### C. Section 1983 Claims

In its motion to dismiss, the State points out that several of Fogleman's claims made in his petition properly arise under Section 1983, including his dispute over "mail, notary public availability, copying and providing paper for court filings, legal research, and [the prison] law library." Doc. [30], at 15. In opposition to the State's motion, Fogleman does not dispute that these identified claims arise under Section 1983. Doc. [41]. It is well-established that "[i]f 'a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release,' . . . the proper vehicle is a § 1983 suit." *Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) (quotation omitted). Here, Fogleman's references to prison life and prison mail facially suggest Section 1983 claims. Doc. [1, 41]. To the extent, Fogleman seeks damages for his allegations, the Court recommends dismissal of those claims without prejudice. *Rice*, 985 F.3d at 1070. Nevertheless, to the extent that Fogleman intended for them to relate to his habeas petition, the Court included consideration of those claims in its analysis above.

### RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's motion to dismiss should be granted.

### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those

findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 25th day of January 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE